## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 17-20307-CR-MARTINEZ/AOR

UNITED STATES OF AMERICA,

v.

DANIEL JONES,

      Defendant.

_____/

### REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Defendant Daniel Jones' ("Defendant" or "Jones") Motion to Suppress [D.E. 272]. This matter was referred to the undersigned by the Honorable Jose E. Martinez, United States District Judge, pursuant to Title 28, United States Code, Section 636 [D.E. 277]. The undersigned held an evidentiary hearing on this matter on January 4, 2018 [D.E. 301]. For the reasons stated below, the undersigned respectfully recommends that Defendant's Motion to Suppress be DENIED.

### PROCEDURAL BACKGROUND

On November 17, 2017, Jones was charged in a Superseding Indictment (hereafter, "Indictment") with the following offenses:

| | |
|---|---|
| Count 1: | Racketeering Conspiracy, from January 2000 to May 9, 2017, in violation of 18 U.S.C. § 1962(d). |
| Count 2: | Conspiracy to Possess with Intent to Distribute a Controlled Substance, from January 2000 to May 9, 2017, in violation of 21 U.S.C. § 846. |
| Count 3: | Possession of a Firearm in Furtherance of a Drug Trafficking Crime, from September 2012 to May 9, 2017, in violation of 18 U.S.C. § 924(c). |

See Indictment [D.E. 193].  The Indictment, which consists of 23 counts and charges a total of fourteen defendants, alleges the existence of a criminal enterprise in Northern Miami-Dade County, Florida that sought to generate income through narcotics distribution and robberies and engaged in acts of violence.  Id. at 3.  The enterprise was allegedly formed under the leadership of Isaac Thompson ("Thompson"), with the leadership role taken over by Antonio Glass ("Glass") upon Thompson's incarceration in 2012.  Id.  Glass is the lead defendant in the Indictment.  Id. at 1.

On May 11, 2016, law enforcement officers stopped a vehicle driven by Jones in which Glass was a passenger.  See Motion to Suppress [D.E. 272 at 1].  At the time, law enforcement seized a cellular phone from Jones, which item was subsequently searched pursuant to a federal search warrant obtained on June 15, 2016.  Id. at 1-2.  Jones seeks to suppress the cellular phone and all evidence associated with it on the grounds that he was illegally detained and that the phone was seized without probable cause.[1]

## APPLICABLE LAW

### 1.    The Fourth Amendment's protection against illegal arrests

The Fourth Amendment protects "the people" from "unreasonable searches and seizures." U.S. Const. amend. IV.  A seizure occurs in the context of the Fourth Amendment "whenever a police officer accosts an individual and restrains his freedom to walk away." Michigan v. Summers, 452 U.S. 692, 696 n.5 (1981) (citing Terry v. Ohio, 392 U.S. 1, 16 (1968).  See also Brower v. Cty. of Inyo, 489 U.S. 593, 596-97 (1989) (A Fourth Amendment "seizure" occurs "when there is a governmental termination of freedom of movement *through means intentionally applied*.").  An individual is in custody if, "under the totality of the

---

[1]  In his Motion to Suppress, Jones had challenged the legality of the search warrant that was issued for the contents of the phone, but he withdrew this argument at the close of the January 4th evidentiary hearing.

circumstances, a reasonable man in the [individual's] position would feel a restraint on his freedom of movement fairly characterized as that 'degree associated with a formal arrest' to such extent that he would not feel free to leave." United States v. Phillips, 812 F.2d 1355, 1360 (11th Cir. 1987). See also United States v. Long, 866 F.2d 402, 405 (11th Cir. 1989) ("A suspect is considered in custody if a reasonable person would believe that he were not free to leave; for example, if the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled."). The reasonableness standard embodied in the Fourth Amendment is articulated in "the general rule that every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause." Summers, 452 U.S. at 700.

Whether a warrantless arrest is constitutionally valid depends "upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). See also United States v. Burgos, 720 F.2d 1520, 1524 n.4 (11th Cir. 1983) ("Probable cause to arrest exists where the facts and circumstances within the officers' knowledge, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed.").

### 2.    The Fourth Amendment's protection against illegal searches

"The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a

few specifically established and well-delineated exceptions." <u>Mincey v Arizona</u>, 437 U.S. 385,

390 (1978) (citations omitted).  "Among the exceptions to the warrant requirement is a search

incident to a lawful arrest." <u>Arizona v. Gant</u>, 556 U.S. 332, 338 (2009).  Additionally, under the

automobile exception to the warrant requirement a vehicle search does not violate the Fourth

Amendment if, "under the totality of the circumstances, there is a fair probability that contraband

or evidence of a crime will be found in the vehicle." <u>United States v. Tamari</u>, 454 F.3d 1259,

1261-62 (11th Cir. 2006) (citations and quotation marks omitted).

### 3.   Fruit of the poisonous tree

Under the long established exclusionary rule, "evidence seized during an unlawful search

[can] not constitute proof against the victim of the search." <u>Wong Sun v. United States</u>, 371 U.S.

471, 484 (1963) (citing <u>Weeks v. United States</u>, 232 U.S. 383 (1914)).  "The exclusionary

prohibition extends as well to the indirect as the direct products of such invasions." <u>Id.</u> at 484-85

(citing <u>Silverthorne Lumber Co. v. United States</u>, 251 U.S. 385 (1920)).  Moreover, the

exclusionary rule applies equally to physical and verbal evidence.  <u>Id.</u> at 485.  As further

explained by the Supreme Court, not "all evidence is fruit of the poisonous tree simply because it

would not have come to light but for the illegal actions of the police.  Rather, the more apt

question in such a case is whether, granting establishment of the primary illegality, the evidence

to which instant objection is made has been come at by exploitation of that illegality or instead

by means sufficiently distinguishable to be purged of the primary taint." <u>Id.</u> at 487-88 (citation

and quotation marks omitted).

### FINDINGS OF FACT

### I.   Testimonial and documentary evidence

1.   The following witnesses testified at the January 4, 2018, evidentiary hearing:

Alcohol Tobacco & Firearms ("ATF") Agent Rosniel Perez ("Agent Perez") and City of Miami Police Sergeant Surami Kelly ("Sergeant Kelly").  The undersigned finds the testimony of Agent Perez and Sergeant Kelly to be credible and reliable.

2.      The following documents were admitted into evidence: Government's Exhibits 1-4.

## II.      Facts

### A.      *Agent Perez*

3.      In 2013, Agent Perez became aware of the existence of a street gang operating in the South Gwen Cherry Housing Complex ("South Gwen Cherry").

4.      Prior to May 11, 2016, Agent Perez had learned through publicly available social media sites that Glass was the leader of the South Gwen Cherry gang.  Agent Perez had also viewed photographs posted on Facebook that showed Glass and Jones together.  See Gov't Exs. 3 & 4.

5.      In one of those pictures, Glass has a firearm in his lap and is counting money; and Jones, who is sitting next to Glass, has what appears to be a bag of marijuana.  See Gov't Ex. 3.

6.      In the other picture, both Glass and Jones are displaying hand signs, which, based on Agent Perez's eight years' experience as an ATF agent in Miami, are usually associated with gangs.  See Gov't Ex. 4.

7.      Also prior to May 11, 2016, Agent Perez had received information regarding Jones' participation in Glass' activities and the activities at South Gwen Cherry.

8.      Based on events that had transpired on April 11 and 18 and May 5, 2016, Glass was wanted for murder and for being a felon in possession of a firearm.

9.      On May 11, 2016, as the vehicle driven by Jones and occupied by Glass was

Case 1:17-cr-20307-JEM   Document 321   Entered on FLSD Docket 01/09/2018   Page 6 of 11

leaving South Gwen Cherry, Agent Perez learned over the police radio that the vehicle was not registered to the occupants or to any person.

10.     While the vehicle was on the 22nd Avenue Bridge over the Miami River, a traffic stop was conducted.

11.     Two traffic citations were issued to Jones; one for driving an unregistered vehicle in violation of Fla. Stat. § 320.02, and one for an inoperative tail light, in violation of Fla. Stat. §316.221(1). See Gov't Ex. 1. Although the citations are not signed by Jones, they both include certifications of delivery to Jones by the issuing officers. Id.[2]

12.     After the traffic stop, Jones was asked to get out of the car, was handcuffed and searched, and was afterwards transferred to the City of Miami homicide station for an interview. According to Agent Perez, Jones was not compelled to go to the City of Miami homicide station for the interview.[3]

13.     In the course of the search, a cellular phone was removed from Jones' person and Agent Perez took custody of it.

14.     Based on Agent Perez's law enforcement experience, he was aware on May 11, 2016 that cell phones are used in narcotics and firearms transactions and many other illegal activities.

15.     Agent Perez subsequently signed the affidavit in support of the federal search warrant for the cellular phone. See Gov't Ex. 2.

16.     After being interviewed at the City of Miami homicide station, Jones was

---

[2]  At the January 4th evidentiary hearing, Jones initially argued that he had not been given the citations, but having proffered no proof in support of this argument, he later limited his contention to the undisputed fact that the citations are not signed by him. As noted above, however, they do include certifications of delivery to Jones by the issuing officers.

[3]  Agent Perez did not see Jones anymore after he was searched, so Agent Perez could not testify as to whether Jones continued to be handcuffed while he was transported to the City of Miami homicide station.

released.

17.     The undersigned accepts Agent Perez's testimony as an accurate description of his participation in the events of May 11, 2016, except for his testimony that Jones voluntarily went to the City of Miami homicide station, given that Jones had been handcuffed when taken out of the unregistered vehicle.

**B.     Sergeant Kelly**

18.     Sergeant Kelly worked in the City of Miami gang unit for five years and was part of the investigation of the gang operating in South Gwen Cherry.

19.     As part of her surveillance work, Sergeant Kelly saw Jones acting as a lookout at various locations in South Gwen Cherry in the course of hand-to-hand drug transactions.   She also saw Jones and Glass together when surveilling narcotics activities.

20.     On May 11, 2016, after learning that the City of Miami homicide unit was looking for Glass, Sergeant Kelly and other officers conducted surveillance at South Gwen Cherry.

21.     When Sergeant Kelly and the surveilling officers saw Jones and Glass get into a vehicle, they alerted other officers, who then pulled the vehicle over.

22.     Sergeant Kelly participated in the traffic stop of Jones and Glass.

23.     Sergeant Kelly was not personally involved in the issuance of the traffic citations to Jones but she identified the two issuing officers as members of the City of Miami Police Department.

24.     According to Sergeant Kelly, Glass was immediately taken into custody and Jones was asked to voluntarily go to the City of Miami homicide station, to which he agreed.

25.     Sergeant Kelly also witnessed the pat-down of Jones, the removal of the cellular phone from his person, and Agent Perez taking custody of the phone.

26.     Sergeant Kelly also witnessed Jones being placed in the back of a police car for transportation to the City of Miami homicide station.  According to Sergeant Kelly, Jones was handcuffed while in the back of the car based on police protocol.

27.     The undersigned accepts Sergeant Kelly's testimony as an accurate description of her participation in the events of May 11, 2016, except for her testimony that Jones voluntarily went to the City of Miami homicide station, given that Jones was handcuffed during the trip.

28.     The undersigned notes an inconsistency in the testimony of Agent Perez and Sergeant Kelly with regard to when Jones was handcuffed.  According to Agent Perez, Jones was handcuffed when he was taken out of the unregistered vehicle.  According to Sergeant Kelly, Jones was taken out of the vehicle, agreed to go to the City of Miami homicide station, and was handcuffed prior to being placed in the back of a police car for transportation, pursuant to police procedure.  The undersigned attributes this inconsistency in the officers' respective recollections to the passage of time, and finds it not to be significant.  The undersigned has rejected the testimony of both officers that Jones went to the City of Miami homicide station voluntarily, given that he was handcuffed prior to being transported there in the back of a police car.

## CONCLUSIONS OF LAW

Based on the foregoing factual findings and legal authorities, the undersigned submits the following conclusions of law.

Preliminarily, the undersigned acknowledges the government's contention that Jones has not established standing to contest the seizure of the cellular phone because he proffered no evidence at the January 4th hearing on the Motion to Suppress that he has a Fourth Amendment privacy interest in the phone.  However, the record fact that Jones was carrying the phone on his person when it was seized during a pat-down is sufficient to establish the requisite privacy

interest.  United States v. Lopez-Cruz, 730 F.3d 803, 808 (9th Cir. 2013) (finding that a defendant who had possession of cell phones during a vehicle stop had a reasonable expectation of privacy in the phones).  Therefore, the undersigned proceeds with the Fourth Amendment analysis.

### A.    *Jones was legally detained in connection with the traffic stop.*

On May 11, 2016, law enforcement determined that the vehicle departing South Gwen Cherry driven by Jones and occupied by Glass was not registered.  Police then conducted a traffic stop and Jones was cited for violating Fla. Stat. § 320.02 for driving an unregistered vehicle.  Under Florida law, this violation is a second degree misdemeanor, which provided the requisite probable cause for Jones' detention.  See United States v. Glover, 441 F. App'x 748, 751 (11th Cir. 2011).

The officers also had probable cause to detain Jones based on his participation in Glass' activities and the activities at South Gwen Cherry prior to May 11, 2016.  Agent Perez had viewed photographs on Facebook where Jones appeared with Glass.  In one of the pictures Glass has a firearm in his lap and is counting money; and Jones, who is sitting next to Glass, has what appears to be a bag of marijuana.  In another picture, both Glass and Jones are displaying hand signs, which, based on Agent Perez's eight years' experience as an ATF agent in Miami, are usually associated with gangs.  Additionally, Sergeant Kelly had seen Jones acting as a lookout at various locations in South Gwen Cherry in the course of hand-to-hand drug transactions; and had seen Jones and Glass together when surveilling narcotics activities.  Therefore, the officers also had probable cause to detain Jones at the time of the traffic stop based on these grounds.

### B.    *The cellular phone was legally seized from Jones*

At the time of the traffic stop, Jones was asked to step out of the car and was searched.  In

the course of the pat-down, the cellular phone at issue was seized.  Based on Agent Perez's law enforcement experience, he was aware on May 11, 2016 that cell phones are used in narcotics and firearms transactions and many other illegal activities.  See United States v. Correa, 347 F. App'x 541, 545 (11th Cir. 2009) (reasonable for agents to conclude that a cellular phone contained digital evidence about a drug conspiracy because cellular phones are "known tool[s] of the drug trade").  Given the existence of probable cause for Jones' detention, the warrantless seizure of the phone was legal as the result of a search incident to arrest.  Gant, 556 U.S. at 338.

Alternatively, the warrantless seizure of the phone at the time of the traffic stop was legal under the automobile exception, which extended to Jones' person.  Tamari, 454 F.3d at 1261-62; United States v. Edwards, 307 F. App'x 340, 344 (11th Cir. 2009) (finding the search of defendant's person, his jacket and his vehicle to be lawful under the exception to the warrant requirement for automobile searches).

## RECOMMENDATION

Based on the foregoing considerations, the undersigned respectfully recommends that Jones' Motion to Suppress be DENIED.  Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Jose E. Martinez.  Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein.  See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).  Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Miami, Florida this 9th day of January, 2018.


ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE


cc:     United States District Judge Jose E. Martinez
        Counsel of Record